Case number 20-6039 United States of America v. Shane A. Fox. Oral argument not to exceed 15 minutes per side. Matthew Robinson for the appellant. You may proceed. Good morning your honors and may it please the court. My name is Matthew Robinson on behalf of the defendant appellant Shane Fox. Mr. Fox stands convicted after a plea of guilty to a conspiracy to distribute crack cocaine in possession with intent to distribute. There are two of 24 counts and a 24 count indictment. The individuals that were involved in this conspiracy were all friends, family members, people that Mr. Fox grew up with and hung around with in the Maysville area. The sentence that Mr. Fox received of 300 months is procedurally and substantively unreasonable for several reasons. The first reason being that the court applied an increase in the statutory minimum penalty to 25 years based upon the finding that Mr. Fox stands previously convicted of serious drug felonies as defined under the newly enacted First Step Act at that point. Serious drug offenses or serious drug felonies are defined basically from the serious drug offense definition applied to ACCA convictions. And it means an offense that is punishable under state law involving the manufacturer distributing or manufacturing with intent to distribute a controlled substance as defined in the Controlled Substances Act. When you look to the Kentucky statute that Mr. Fox was convicted of violating, trafficking in Kentucky, that offense we argue is categorically not a serious drug offense as defined by 924E2A. And the reason is because the Kentucky statute punishes conduct that is broader than the federal statute. Specifically, there's a substance called Fluzepantram, and I'm not sure if I'm expressing that or pronouncing that correctly. That is not listed in the Controlled Substances Act except as a Category 4 controlled substance. Additionally, it punishes... Why is a Category 4 controlled substance not enough to count? Well, it's not enough to count for a number of reasons. But first of all, it's listed if you go down through the definitions. However, it's not listed as one of the acts as a Schedule 1 or Schedule 2 substance. And we would contend that it needs to be a Schedule 1 or Schedule 2 substance if you're comparing the two statutes equally. But there's another reason as well, and it's also because the trafficking offenses in Kentucky punish the act of dispensing. That's separate. Let's just go back and finish off with the drug. Could you use the word Category? Federal usually talks about Schedule. Is that because Category is a state term? I misspoke. It's Schedule 1 or 2 substance under the Federal Controlled Substances Act. The KRS doesn't really list whether that's any type of classification of that drug. It just is found in KRS 218A. Are you saying that only Schedule 1 and 2 drugs can count as serious drug offenses? That is part of our argument, yes, because that's how it has been classified. In each of the cases that I've read, there's never been a case where I've seen an individual prosecuted or convicted for any offense with respect to flusipantran. In addition, it's difficult to determine, because of that, it's difficult to determine what quantity of the substance would lead to a conviction under Federal law or even a prosecution. And frankly, I've never heard of the substance. I thought it was what's commonly called Roofies or Bill Crosby date rape drug, which is a pretty serious drug. Your Honor, you've educated me with that. My understanding. We'll see what your adversary has to say. Now, there's a second reason. That's because it punishes the act of dispensing. And dispensing is expressly excluded from the definition under Federal law under 802.11. And especially when you look to what dispensing means in Kentucky state law, when you look to Kentucky cases, people have been convicted of dispensing for the act of handing, not selling, but sharing drugs with someone. And it's very similar to almost... Isn't that distribution, though? I mean, I thought your adversary's argument, because I have had cases where you try to look at doctor's dispensing, but the problem is the Kentucky statute specifically says unlawful dispensing, right? I mean, the whole, when you do these things, you have to do them unlawfully, so that it's not that it's broad enough to bring in a doctor, which is the claim I've seen in other cases. The doctor wouldn't be unlawfully dispensing. That is correct. And I concede your point on that, Your Honor. However, when you look to the case law in Kentucky, when someone is convicted of sharing drugs with someone without, you know, any remuneration in terms of payment or anything else, it's very different than distributing with the, you know, for sale or for some other type of purpose. It seems to me it's more of a personal use type of conviction. And, yes, it can become a sentence of more than a year in Kentucky if you do that. But because the Kentucky law... Punishment for distribution when it's simple, you know, sharing at a party. I thought the distribution, if I have ten pills and I give them to nine friends at a party, that's distribution federally, isn't it? It can be, but there's typically a... The problem is, yes, of course, federal law can reach to almost anything. But is it in reality something that is punishable under federal law? And in this instance, I think when you look to the statute, when you look to the statute and the definitions in the federal system and you compare these two, there are differences. And I think that these distinctions that we're talking about demonstrates that the Kentucky statute is broader than what is punishable under federal law. And for those reasons, we would argue that it doesn't qualify as a serious drug offense under the First Step Act. You know, there are many cases that cloud the issue, frankly, because they're all over the place. There's some new cases that have come out just recently. You know, there's cases talking about Indiana conviction for trafficking in cocaine. Not a federal drug offense. It doesn't seem it's completely counter... But what case? It's not a federal drug offense. Let me find it for you, Your Honor. Let's see. Recent decision. There's United States v. Oliver out of the Eighth Circuit, 2021. I think it's February of this year, found that the Illinois conviction... Illinois. You said Indiana earlier. Yep. There's another one in Indiana. United States v. Lomax is a district court case where they found that the counsel was ineffective at resentencing after a remand on appeal for failing to argue that Mr. Lomax's 2001 Indiana conviction for possession of cocaine was not a felony drug offense under the much easier standard previous to First Step Act. There's also United States v. Thompson, a Second Circuit case, just came out in 2020, where they compared a New York statute for criminalizing... that prohibits the sale of controlled substance under public health law, that that offense was not a serious drug felony, specifically serious drug felony under the new law. And that Thompson site is 961 Fed Third 545. Thank you. And the point is that there's... It just seems like the case law develops literally every six months on what... How is the categorical approach applied in any instance? And frankly, in the Sixth Circuit, I haven't seen a case where the Sixth Circuit's actually applied a categorical approach to determine whether an offense is a controlled substance offense or a felony drug offense. And felony drug offense is part of this definition under the serious felony drug offense, obviously. Counsel may want to... With that, I'm wrapping it up, Your Honor. I thank you very much. I'll focus on this issue again on rebuttal. Thank you. Good morning, and may it please the Court. Amanda Harris on behalf of the United States. This Court should affirm Mr. Fox's sentence in the judgment of the District Court because his prior convictions for Kentucky drug trafficking categorically qualify serious drug felonies under 21 U.S.C. section 841. I'll start by addressing a few of the arguments that were presented this morning. The first one being that sharing or transferring drugs between persons without consideration or without payment does violate federal law. Equally, it violates state law and this statute under Kentucky law. The Jackson case, which is cited in our brief, addresses the controlled substance definition under the guidelines, but it addresses that very claim that the federal law requires some sort of commercial element, and this Court held that it did not. Secondly, with regard to the Flunitrazepam argument that was presented in the brief and addressed this morning, that substance is a date-rate drug and it is prohibited and named as a controlled substance offense under the federal statute as well. And if you look at 802.6, which defines controlled substances, all schedules of controlled substances are included and prohibited under federal law. So when you're comparing under a categorical approach whether Kentucky prohibits a broader range of conduct, both federal law and the Kentucky statute at issue here would criminalize the same conduct with regard to distributing Flunitrazepam. Is it right that that's a Schedule IV drug? That's correct, Your Honor. But you say that the definition that you cite says all schedules, meaning not only one and two, but three and four. That's correct, Your Honor. And so for that reason, it is not overbroad. I'm not aware of another argument that counsel has made. There was a reference, I believe, in the briefing to a different part of 841. The prior terminology that was used and is still used with regard to 841b1c, the felony drug offense language, but of course that language isn't at issue in this case because the defendant was convicted under 841b1a, which of course relates to serious drug felonies after the first step back. Finally, Your Honors, with regard to dispensing, that argument fails really for a number of reasons. First and foremost, 802.10 defines dispensing as the lawful dispensation of drugs, which relates to doctors prescribing drugs on a daily basis. So the distribution, of course, excludes that type of conduct because it's not criminalized under either the Federal Controlled Substances Act or under Kentucky law in this statute. What distribution does include, of course, is the unlawful dispensation of controlled substances outside the scope of professional medical practice and without a legitimate medical purpose. Sorry, that language that you just gave, is that from the Kentucky statute in law or the Federal? It's not under either of the statutes, Your Honor. It's from what this Court has interpreted dispensing to mean under Federal law. So when someone is charged with and convicted of dispensing drugs under Federal law. His argument, as I take it, is that the State law is broader than the Federal law because he thinks that the State law could include lawful dispensing. So can you focus on what the State statute criminalizes? Yes, Your Honor. First, the State statute uses the phrase unlawful, which is similar to the Federal definition of dispensing, which would be outside, again, the scope of medical practice. There isn't a specific case that I'm aware of that says that, but all of the cases where someone is prosecuted under Kentucky law for dispensing, as far as I'm aware, would be outside the scope of professional medical practice. And the defendant has not cited a single case where any individual has been prosecuted for typical lawful dispensation, the type of conduct you would expect a doctor to be undergoing and engaging in. And this Court and the Supreme Court have repeatedly emphasized that this isn't a quest of imagination, that there has to be a realistic probability that someone would be prosecuted under the State statute for the type of conduct contemplated by the argument that the defendant is raising. And here the defendant has not cited a single case for the proposition that someone could be prosecuted successfully under Kentucky law for dispensing controlled substances and standard medical practice. Moreover, Your Honor, the idea in terms of, even if Mr. Fox is talking about the type of dispensing that is also prohibited under Federal law, it's very clear from the Shuler case, the Supreme Court case that was handed down recently, that we're not trying to make up some sort of generic definition of distribution. And to accept Mr. Fox's argument would require the Court to sort of create some generic distribution that would exclude unlawful dispensation. And that was expressly rejected by the Court and Shuler. Instead, we're looking at whether the conduct criminalizes the instances that are outlined in Section 924E here, distribution. And of course, under both Federal and State law, dispensing is a form of distribution. The last two quick points I'll make with regard to dispensing. One, Your Honor, Mr. Fox's interpretation of dispensing would make little sense when the Court looks to 924E2i, which refers to the Federal conduct that would qualify as a serious drug offense under the ACCA. Because someone, of course, can be convicted for dispensing under Federal law. And so Mr. Fox's reading would require the Court to find that that same conduct that was prosecuted and a person was convicted under State law for the same conduct would not qualify as a predicate offense under the ACCA. And lastly, one of the cases cited by the defendant in his brace, the Goldston case, addressed very similar arguments as it relates to the Tennessee drug trafficking statute. And this Court rejected both the argument that Mr. Fox is making here with regard to sort of lawful dispensation, as well as in footnote 2 of that case, this Court also rejected the argument that Federal law doesn't prohibit dispensation. So for those reasons, this Court should affirm with regard to the District Court's finding that his prior convictions qualified categorically as serious drug felonies. The Court has no further questions with regard to that issue. I'll just say briefly that because the mandatory minimum controlled with regard to the guidelines in the sentence in this case, the Court really doesn't need to reach it. Of course it may, but it doesn't need to reach the career offender issue or the issue as it relates to the leadership enhancement that are brought up here on appeal. The Court could simply affirm based on the District Court's finding that both of the prior convictions qualified as serious drug felonies. As to the final issue, the District Court had authority under statutory authority to make the recommendation that he made at sentencing, and there was no reversible error. I don't believe that Mr. That recommendation, in effect, was really to the State, not to the Federal system. Is that right? That's correct, Your Honor. And just to clarify, State parole works potentially one of two ways. The first way is what I think the way that Kentucky actually works, which is that when a defendant is sentenced initially, he is given a term of imprisonment and he goes to serve that term of imprisonment. Once he is paroled, he still has an undischarged term of imprisonment hanging over his head because, say for example, he's sentenced to eight years and then serves four of those years. When he's paroled, he still has four years hanging out there, and if he is revoked, those four years will be imposed. So it's sort of an undischarged term of imprisonment. And here the Court was making a recommendation that if his parole is revoked, that sentence be ran consecutive. So it's really an undischarged term of imprisonment. But even if it went to a court. That has no forcible effect. The State could say, sorry, Judge, we decide we don't want to do it that way. Yes and no, Your Honor. If the Judge is deciding the issue of parole, then no, of course, the Judge could do whatever the Judge wanted to do. But I think that the way the State system works, and I'm not a I may have used the word Judge incorrectly. Whatever the parole authority is, they still don't answer Judge Bunning. That's correct, Your Honor. Essentially, though, my understanding is the Parole Board doesn't really have discretion of what term of imprisonment to impose. All they do is impose the remainder of the sentence that was hanging out there from the original sentence, which would then, I suppose, be up to the Department of Corrections to determine whether to run that consecutive or concurrent understate law. Like the Department of Corrections. That's correct, yes, Your Honor. Whoever the ultimate decider is doesn't have to listen to Judge Bunning. That's correct, Your Honor. If the Court has no further questions, the Government respectfully recommends that this Court affirm the defendant's sentence and judgment. Thank you. Any rebuttal? Thank you, Your Honors. May it please the Court. With respect to the 851 enhancement or the notice and the enhancement on 841, I think it's important to note that I mentioned it earlier, the Sixth Circuit has not engaged, or at least I haven't found a case where the Sixth Circuit has engaged in a categorical approach when dealing with what is a felony drug offense or what is a serious drug offense. And I would take contention with the Government's statement that the definitions of felony drug offense and those findings in cases regarding felony drug offense versus serious drug offense, that those don't apply here. They do apply. To be a serious drug offense, it has to be a felony drug offense to begin with under federal law. And then it also has to qualify under the 924E definition. And I make this point because the case that I alluded to earlier, United States v. Thompson, out of the Second Circuit, makes a point about the Sixth Circuit's failure to apply a categorical approach when it comes to substance offenses. And the quote out of the decision is the Second, Seventh, Eighth, and Eighth Circuits have found the categorical approach applicable to 841B1A enhancement, which mirrors B1B, as Your Honors know. And Section 802.44, the defining of the controlled substances. The Third and the Ninth Circuits have also applied that categorical approach to find felony drug offenses. I'm sorry, the part where you're rattling off those different circuits, are you quoting Thompson? I'm quoting out of Thompson at 961, Fed Third at 551. Okay, thank you. The court notes specifically that only the Sixth Circuit in an unpublished opinion that cites no authority and provides no rationale has declined to apply the categorical approach to identify felony drug offenses. I'd simply state for any other reason just to have guidance in the Sixth Circuit on this issue. The court should take that opportunity to correct the law and to correctly apply the law in this case. I'm sorry, I'm not following you. When we're comparing the two offenses, what are we doing? Well, I'm simply quoting out of the Second Circuit in their quote with respect, and this is a case from last year. I have not seen, as I've said, a Sixth Circuit case dealing with felony drug offense applying this approach. And there is simply a quote out of the Second Circuit. Do you think they're saying that we use some other approach or simply that we haven't had? No, I think what they're saying is that this comes through ACC definitions and they're talking about the approach which has been focused on whether it's a crime of violence or a violent felony rather than a controlled substance offense or a felony drug offense. That's their point in this statement. But the fact remains that when you go back and you look at the record from sentencing, the district court didn't even engage in this analysis whatsoever. It simply looked to the pre-sentence investigation report. It's not a Shepard approved document. It's not anything from the official court record and said this qualifies as a controlled substance, or excuse me, a serious drug felony. And that was the basis for the court's finding essentially that what was listed in the pre-sentence report made it clear that those offenses qualified to trigger the enhancements both with the career offender and with the statutory enhancement. And I think that's the first error that the court made in doing that. And that's a procedural error that as cited in Goldstein, the proper analysis requires the formal categorical approach. And not to do that is procedural error. And with any reason we'd ask for this case to be reversed on that error alone. Of course there are other errors that we've listed in the brief. And just to respond to the government's contention that there's an undischarged term of confinement in Mr. Fox's case, I think we need to look to Section 5G 1.2 of the guidelines. And the fact that this could be an undischarged term of confinement is not enough. This is not an undischarged term of confinement that the judge ran this federal sentence consecutive to. With that, I would ask the court to remain for resentencing. Thank you very much, Your Honors. Thank you very much. And the case is submitted.